UNITED STATES DISTRICT COURT                    SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Rainier DSC 1, LLC, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| *versus* | § | Civil Action H-12-1806 |
| | § | |
| Rainier Capital Management, LP, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## Opinion on Partial Summary Judgment

1.      *Introduction.*

Investors bought real-property interests in a clinic's building from a promoter. Two years later the tenant defaulted on its rent. The investors – each in his own limited-liability company – seek to hold the doctors who were subtenants and members of the tenant liable on the lease. The investors base their action on casual descriptions of the doctors as partners of the tenant in secondary, non-contractual materials from the promoter. The members will prevail.

2.      *Background.*

In March of 2000, a group of doctors formed Foundation Surgery Affiliate of Southwest Houston, LLP. That same year Southwest bought the Doctors Surgical Center, a two-story clinic. Seven years later, Southwest decided to sell the building and to lease the space instead.

In May of 2008, Southwest – now a limited-liability company – sold the building to Rainier DSC Acquisitions, LLC, for $11.5 million. Southwest remained in the building as its only tenant. As it bought the building, Rainier DSC sold tenant-in-common interests to seventeen investors. Rainier DSC delivered a private-placement memorandum to the investors; neither Southwest nor the doctors were part of the solicitation or transaction.

Southwest paid the rent through October of 2010. That November, Southwest could not pay because of loss of some doctors – the subtenants – and loss in business of others. Not receiving rental income, the investors defaulted on the mortgage. After two forbearance agreements with the lender, the investors are trying to sell the building. The mortgage is non-recourse to them, and they are limited-liability companies in any event.

3.    *Foundation Surgery Affiliate.*

The investors sued Foundation Surgery Affiliate – it has been dismissed – and then Foundation Surgery Affiliate, Inc., for breach of the lease.

The promoter's placement memorandum described Southwest as a physician partnership formed and managed by Foundation Surgery Affiliate. Affiliate describes itself on its website as a "partner with physicians." The investors say that Southwest was a joint venture between the doctors and Affiliate and that Affiliate is responsible for the rent.

Foundation Surgery Affiliate and Foundation Surgery Affiliate, Inc., do not exist. Foundation Surgery Affiliate, Inc., became Foundation HealthCare Affiliates, LLC, before the sale of the building in 2008. HealthCare owns all of Foundation Surgery Affiliates, LLC, and it in turn owns all of Foundation Surgery Holdings, LLC. Surgery Holdings owns 10% of Southwest; the doctors own the rest.

The investors claim that they were confused about the Foundation Surgery Affiliate in the promoter's placement memorandum. None of the investors' declarations mentions a specific datum about which they were unclear. An investor may not have reasonably relied on something about which he swears he was confused before closing. The time to clear the fog was before they bought a building for $11 million.

Additionally, however the investors now choose to characterize it, the entity that they sued is two or three steps removed from the lease. Because no investor says that he looked at Affiliate's website when deciding to invest, none could have reasonably relied on what it said.[1]

If Affiliate claims to be a partner with the doctors, that does not bind the doctors. Just as the investors hired another Rainier company to manage the owner's interest, Southwest hired Foundation Surgery Affiliate, Inc., to manage its internal operations. Affiliate did not write or sign the placement memorandum, did not lease the building, said nothing to the investors, and was not in a joint venture or partnership with the doctors. A subsidiary of a subsidiary was a member of Southwest, and the investors did not sue it. Even if the investors were told about a partnership, the investors could not have relied on it; the placement memorandum said ten

---

[1] Harris v. Sessler, 3 S.W. 316, 317 (1887) (requiring evidence "that defendants ever held themselves out as partners"), *followed by* Musick v. Pogue, 330 S.W.2d 696, 698 (Tex. Civ. App.—San Antonio 1959).

times that Southwest was (a) the only tenant of the building and (b) a limited-liability company.[2] They also had no data about Affiliate to suggest that it was able to pay.

To pierce the protections of limited liability, the investors would need to ignore the corporate structures of two or three entities. They have shown no facts – nothing – to support a claim against Foundation Surgery Affiliates, LLC, or Foundation HealthCare Affiliates, LLC, for breach of the lease.[3]

The investors will take nothing from Foundation Surgery Affiliate, Foundation Surgery Affiliate, Inc., Foundation Surgery Affiliates, LLC, Foundation Surgery Holdings, LLC, and Foundation HealthCare Affiliates, LLC.

4.    *Doctors.*

Relying on the same partnership-by-estoppel and pierce-the-veil arguments, the investors sued twenty-nine doctors for the breach of the lease. They say that the doctors are responsible for the lease because they were in a partnership with Southwest.

The investors' only facts are their fifteen declarations and the placement memorandum. In the declarations the investors claim that they understood the description of the doctors to mean that each doctor was in a partnership with Southwest, and that if they had known the truth, they would not have invested.

The memorandum says that Southwest is a physician partnership. It also lists the doctors, who are called "partners" of Southwest. The memorandum tells the truth: the doctors were members of it. The investors could not have reasonably believed that the doctors were in a partnership with Southwest. Under the "Risk Factors" section, the memorandum notes that a default by Southwest might mean that the investors will not be able to pay the mortgage, the lender will foreclose, and the investors "would likely lose their entire investment in the property." Again, on many pages including the definitions, the memorandum is clear that Southwest – a limited-liability company – is itself the only tenant.

The investors claim ignorance about the relationship between the doctors and Southwest. Active ignorance is not a misrepresentation by the doctors. The investors

---

[2] *Paramount Petroleum Corp. v. Taylor Rental Ctr.*, 712 S.W.2d 534, 537 (Tex. App.—Houston 1986).

[3] *SSP Partners v. Gladstrong Invs. Corp.*, 275 S.W.3d 444, 454 (Tex. 2008).

understood members, managers, and limited liability well enough when they created them for their use. The doctors did not write the memorandum, did not own the building individually, and did not lease the space individually. The investors had no knowledge about the quality of the individual doctors' finances. No-where in the memorandum did Rainier say that the doctors would cover the rent, and Rainier cannot bind the doctors.

Each investors' declaration says the same thing in exactly the same language; they just signed what their counsel gave them for this lawsuit. These after-the-fact, imagination-of-counsel "declarations" are not evidence; they have no indicia of reliability – indeed no facts, just conclusions. All the information that they had about the deal came from their promoter through the memorandum. No person could reasonably believe that the doctors would pay the rent if Southwest did not pay. Even a cursory skim of the memorandum shows that if Southwest broke its lease, the investors could only look to Southwest.

"Partner:" The casual or metaphorical use of a common English word that also happens to have a technical meaning in law does not commit to the substance of the legal meaning. Rainier and Affiliates used the term the same way people do when they talk about *stakeholders* or *partners.*[4]

Without the technical context the law requires, *associate, affiliate, companion,* and *colleague* are all common meanings of partner. In the Southwest, we also have *pardners.* The doctors told no one that they were partners nor did Southwest; neither did they accede to Rainier's representations, even if they could have been read the investors' way.

The investors have no facts to support a piercing of Southwest's corporate structure.

---

[4] *See* http://www.whitehouse.gov/ondcp/partnering-with-ondcp ("ONDCP's efforts to consult with stakeholders are evidenced by President Obama's 2013 National Drug Control Strategy, which lays out a collaborative and balanced approach to drug control and was developed based on unprecedented input from a wide variety of partners.").

*See* http://www.oharrowconstruction.com/?page_id=66 (Here at O'Harrow, we have partnered with some of the most respected parties in the constriction industry to provide our clients with the best and most complete building projects possible.).

*See* http://www.matrixpartners.com/about-us/partnering-with-matrix/ ("We have a long history of working with first-time entrepreneurs and have partnered with dozens of founders when they were still in the concept stage.").

They were not pedestrians run down in a crosswalk by a car owned by an uninsured, undercapitalized company. The investors were sophisticated parties seeking an investment with the potential for growth and tax benefits. They knew what Southwest was and how they worked. The investors chose to operate with limited-liability companies themselves, borrowed $7 million on a non-recourse mortgage loan, and leased their land to a limited-liability company; they got the benefit of the arrangement, and it did not prosper. If they think the doctors should be personally liable – the reciprocity of justice would suggest that the mortgage to Sterling Bank be converted from non-recourse into full recourse to them individually, not just their corporate shells.

The promoter's memorandum noted the risks; Southwest was the only obligor on the lease, other hospitals nearby were competing, litigation or regulation could hurt Southwest, the demand and costs for healthcare could change, and the investment was not diversified. The investors had this information, and they bought the building. Within two years, those risks became reality. Buyer's remorse does not permit unprincipled lawsuits. Other than Southwest's role in the transaction – sole tenant – they knew nothing about its finances much less those of its members and subtenants.

5.      *Conclusion.*

The investors' myopic obsession with the casual description of the doctors being in a partnership is misplaced. A casual reading of the memorandum – the only document the investors rely upon – shows that if Southwest stopped paying the lease, the investors could only look to its assets and no further. The memorandum was clear: the investors were buying a building with a single, limited-liability tenant with all of the concomitant benefits and risks.

| | | |
|---|---|---|
| Rainier DSC 1, LLC | Rainier DSC 2, LLC | Rainier DSC 3, LLC |
| Rainier DSC 4, LLC | Rainier DSC 5, LLC | Rainier DSC 6, LLC |
| Rainier DSC 7, LLC | Rainier DSC 8, LLC | Rainier DSC 9, LLC |
| Rainier DSC 11, LLC | Rainier DSC 13, LLC | Rainier DSC 14, LLC |
| Rainier DSC 15, LLC | Rainier DSC 16, LLC | Rainier DSC 18, LLC |

will take nothing from

| | | |
|---|---|---|
| Wayne Alani | Eddie Matse | Paul Brindley |
| Charlotte Alexander | Thomas Parr | Gary Card |
| Carl Hicks | Vincent Phan | Newton Duncan |
| Gregory Hoover | Timothy Sitter | Joseph Edmonds |
| Lin Jones | Edwin Taegel | John Jones |
| Stan Jones | Ray Valdez | James Lai |
| Eugene Lou | James Albright | Standford Shoss |
| Marvin Lerner | Eugene Alford | John Yoo |
| James Martin | Cary Moorehead | Marvin Chang |
| Bradford Patt | Robert Sickler | Foundation Surgery Affiliate |

Foundation Surgery Affiliates, LLC       Foundation Surgery Holdings, LLC

Foundation HealthCare Affiliates, LLC.    Foundation Surgery Affiliate, Inc.

Signed on August 29, 2013, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge